IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TYLER FELLERS,

      **Plaintiff,**

      v.

BOHM FARM & RANCH, INC.,

      **Defendant.**

Case No. 22-CV-2499-JAR

## MEMORANDUM AND ORDER

Plaintiff Tyler Fellers brings this action under the Fair Labor Standards Act ("FLSA")[1] against Defendant Bohm Farm & Ranch, Inc. ("BFR"), to recover unpaid overtime wages. Plaintiff alleges that Defendant improperly classified him as an independent contractor, and that he is entitled to overtime wages because he was an employee as defined by the statute. This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 25). The motion is fully briefed and the Court is prepared to rule. As explained more fully below, the Court denies Defendant's motion.

**I.     Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[2] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a

---

[1] 29 U.S.C. §§ 203, *et seq.*

[2] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[3] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

reasonable jury could return a verdict for the nonmoving party."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[8]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] The facts "must be identified by reference

---

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[9] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

[10] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

## II.    Uncontroverted Facts

The following material facts are uncontroverted,[14] stipulated to for the purposes of summary judgment, or viewed in the light most favorable to Plaintiff.

Defendant is a corporation with its principal office in Salina, Kansas, that provides trucking services. Pete Bohm is Defendant's owner and president.

Plaintiff is a 51-year-old man who was born and raised in the Kansas City area. Plaintiff's highest level of education is a GED, though he took some college courses at Johnson County Community College and Kansas State University. Plaintiff has worked in the trucking business in several different capacities since 1999. Between 2003 and 2018, Plaintiff was employed at three different trucking businesses as either a logistics broker or a co-owner. A logistics broker finds shippers, manufacturers, and distributors who need freight hauled, and connects them with companies like Defendant to haul the freight. Immediately prior to working for Defendant, Plaintiff was a co-owner of Midwest Trucking Group ("Midwest").

Plaintiff first met Bohm while working at Midwest. During the last 18 months that Plaintiff worked at Midwest, Defendant became a "really big customer."[15] Bohm eventually

---

[12] *Adams*, 233 F.3d at 1246.

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[14] Defendant did not file a reply brief. Therefore, pursuant to D. Kan. Rule 56.1(b)(2), all properly supported facts set forth in Plaintiff's statement of additional facts are deemed uncontroverted for the purposes of this Order.

[15] Doc. 26 at 2.

proposed that Plaintiff work directly for Defendant to help it grow as a trucking company. In early 2018, Plaintiff agreed to be bought out of his share of Midwest. Then, in February 2018, Plaintiff moved to Salina, Kansas and began to work for Defendant. Bohm paid Plaintiff $5,000 in moving expenses.

Plaintiff worked exclusively for Defendant from February 2018, through his resignation on May 31, 2022. Plaintiff's primary role with Defendant was dispatching and operations. Plaintiff secured loads for Defendant's drivers by communicating with customers, shippers, receivers, drivers, and brokers. Bohm oversaw Plaintiff's work. Plaintiff was required to maintain daily office hours of 8 a.m. to 5 p.m. at Defendant's facility. Plaintiff also consistently worked nights and weekends at Defendant's direction, and faced verbal abuse from Bohm if he did not do so. Unlike many trucking companies, Defendant did not have any night dispatch workers to address issues that arose with loads during the evenings or weekends. This meant that Plaintiff was effectively "on call" for the company at all times.

Plaintiff directly hired two individuals to do data entry for him. The first was the daughter of a co-worker who Plaintiff paid $40 per week for about a year. Defendant initially split this fee with Plaintiff but eventually stopped contributing. Then, Plaintiff hired the wife of a co-worker to do the data entry for $50 per week for approximately two years. Plaintiff also incurred expenses for occasional pizzas for employees, and overnight expenses for drivers whose trucks had broken down. Plaintiff occasionally submitted these expenses to Defendant for reimbursement.

Plaintiff earned a 3.5% commission on revenue from loads brokered by him. Defendant classified Plaintiff as an independent contractor, and Plaintiff filed the corresponding tax form (IRS Form 1099). However, Plaintiff never had an LLC during his time working for Defendant,

and was paid as an individual, not through an entity.  Each year, Defendant issued tax forms to Plaintiff showing the amount of commissions paid to him.  These amounts varied from year to year: Plaintiff earned $92,788.59 in 2018; $63,100.72 in 2019; $67,292.82 in 2020; and $121,821.68 in 2020, which was Plaintiff's last full year with Defendant.  The variations in pay were due to different factors, including fluctuations in the market and trucking industry, as well as the impact of the pandemic.  Including Plaintiff's final months of commissions in 2022, Plaintiff earned a total amount of $378,451.72 in commissions.

Plaintiff filed federal tax returns in 2018, 2019, and 2020, but has not filed returns for 2021 or 2022.  Plaintiff hired an accountant to prepare his tax returns for him.  In 2018, the first year Plaintiff worked for Defendant, Plaintiff listed zero wages but claimed a business income of $91,106.  On his Schedule C, Plaintiff identified his business as "Truckload Broker" and gave his residential address as his business address.  He claimed an adjustment for self-employment tax, as well as business deductions for healthcare, his cell phone, and business use of his home.  Plaintiff's tax returns for 2019 and 2020 were substantially similar, altering only the profit amount based on the variations in his income from year to year.

Plaintiff resigned on May 31, 2022, because of money, constant abuse, questions about ethics with drivers, and safety issues.

**III.   Discussion**

The FLSA provides that no employer may employ any of his employees "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."[16]  Plaintiff alleges that he consistently worked more than forty hours

---

[16] 29 U.S.C. § 207(a)(1).

5

in a workweek without receiving FLSA-mandated overtime compensation.  Defendant argues that Plaintiff is not entitled to any recovery under the FLSA because Plaintiff was an independent contractor, not an employee.

For the FLSA to apply, there must be an employer-employee relationship.[17]  The parties stipulate that Defendant is an employer under the FLSA,[18] but dispute whether Plaintiff is an employee.  "The FLSA defines an employee as 'any individual employed by an employer.'"[19] The statute "defines the verb 'employ' expansively to mean 'suffer or permit to work.'"[20]  "This definition 'stretches the meaning of "employee" to cover some parties who might not qualify as such under a strict application of traditional agency law principles.'"[21]  Thus, courts are not constrained by

> any contractual terminology or by traditional common law concepts of "employee" or "independent contractor."  Instead, "the economic realities of the relationship govern, and the focal point is 'whether the individual is economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself.'"[22]

There are six, non-exhaustive factors the finder of fact considers in applying the economic realities test:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.[23]

---

[17] *Id.*

[18] Doc. 24 at 2 ("Defendant is an employer as defined by the FLSA.").

[19] *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994) (quoting 29 U.S.C. § 203(e)(1)).

[20] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).

[21] *Henderson*, 41 F.3d at 570 (quoting *Darden*, 503 U.S. at 326).

[22] *Id.* (quoting *Dole v. Snell*, 875 F.2d 802, 804 (10th Cir. 1989)).

[23] *Id.*

"This test is based upon the totality of the circumstances, and no one factor in isolation is dispositive."[24] The existence and degree of each factor is a question of fact, but the ultimate conclusion of whether a worker is an employee or an independent contractor is a question of law.[25]

The Court considers each factor below and finds that a reasonable jury could conclude that the factors weigh in favor of a finding that Plaintiff was an employee. Therefore, the Court denies summary judgment.

### A.     Degree of Control

The first factor analyzes Defendant's degree of control over Plaintiff.[26] In evaluating this factor, courts consider the Plaintiff's "independence in setting his own work hours . . . the extent of [Defendant's] supervision of [Plaintiff], and the degree of [Plaintiff's] ability to work for other employers."[27] Defendant asserts that it did not control Plaintiff's work because Plaintiff decided which clients to call, and which loads to accept or decline. Defendant also argues that Plaintiff's substantive work did not change from the time he worked for Defendant through Midwest, to the four and a half years that he worked directly for Defendant. Plaintiff responds that Defendant controlled his hours, required him to work nights and weekends, and Bohm berated him if

---

[24] *Id.* (citing *Dole*, 875 F.2d at 805).

[25] *Dole*, 875 F.2d at 805 (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988)); *Merrill v. Harris*, No. 21-1295, 2022 WL 3696669, at *7 (10th Cir. Aug. 26, 2022) (citation omitted) (noting that the Tenth Circuit reviews a district court's factual findings for each factor of the economic realities test for clear error, and the ultimate classification decision de novo).

[26] *See Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018).

[27] *Id.* (first citing *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1441 (10th Cir. 1998); then citing *Johnson v. Unified Gov't of Wyandotte Cnty. & Kansas City*, 371 F.3d 723, 729 (10th Cir. 2004); and then citing *Henderson*, 41 F.3d at 570).

drivers had any issues. The Court finds that a reasonable jury could conclude that Defendant exercised a high degree of control over Plaintiff.

While the exact number of hours Plaintiff worked per week is disputed, the record reflects that Plaintiff was expected to be in the office from 8 a.m. to 5 p.m., and to answer calls in the evenings and over weekends. Plaintiff faced verbal abuse from Bohm if he did not maintain this schedule. This evidence also suggests that Bohm closely supervised Plaintiff's work. Additionally, Plaintiff worked exclusively for Defendant for over four years. Though Bohm testified that he would have been fine with Plaintiff working for additional businesses, it is undisputed that Plaintiff never did so. In fact, a reasonable jury could find that the hours he was required to keep, as well as his on-call responsibilities, practically precluded Plaintiff's ability to work for anyone else.[28]

Moreover, while Plaintiff performed similar functions for Defendant as a co-owner at Midwest, there is no evidence that Plaintiff's working experience remained the same after he moved to Salina to work directly for Defendant. For example, there is no evidence that Defendant was Plaintiff's *sole* client for the last year and a half that Plaintiff was a co-owner of Midwest. And after Plaintiff's transition to being a dispatcher for Defendant, Plaintiff lost the freedom to set his own hours. There is no evidence that Defendant exerted this degree of control over Plaintiff while Plaintiff was a co-owner at Midwest.

Thus, a reasonable jury could conclude that this factor weighs in favor of classifying Plaintiff as an employee, rather than an independent contractor.

---

[28] *See Dole*, 875 F.2d at 808 ("[I]t is not what the [workers] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive." (emphasis in original ) (quoting *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042, 1047 (5th Cir. 1987))).

B.     **Opportunity for Profit or Loss**

For the second factor, the relevant analysis is whether Plaintiff "had the ability to profit based on his performance. Such an ability is 'consistent with the characteristics of being [an] independent businessm[a]n.'"[29] Generally, the type of profit or loss contemplated by this factor is "the ability to make a profit or sustain a loss due to the ability to bid on projects at a flat rate and to complete projects as [the worker] sees fit."[30] Defendant asserts that Plaintiff had a clear opportunity for profit or loss, as evidenced by his varied income per year. Plaintiff alleges that he had no real opportunity for profit or loss, and that the variation in his income was due to fluctuations in Defendant's pace of work.

Plaintiff undoubtedly had the ability to increase his profit based on his performance. Like all workers who work on commission, Plaintiff had a strong incentive to perform because he took in 3.5% of the revenue for each load he coordinated for Defendant. This stands in contrast to a worker who is paid a flat rate to accomplish a particular task, and thus cannot "increase or decrease his profit based on how well he did his job."[31] Plaintiff's earnings depended on his own judgment and initiative.[32] However, there is no evidence that Plaintiff had control over "the essential determinants of profit in [Defendant's] business."[33] For example, there is no evidence that Plaintiff hired his own drivers or negotiated the quantity of goods transported per load. Nor is there evidence that Plaintiff had a "direct share in the success of the

---

[29] *Acosta*, 884 F.3d at 1236 (alterations in original) (quoting *Baker*, 137 F.3d at 1441).

[30] *Baker*, 137 F.3d at 1444.

[31] *Acosta*, 884 F.3d at 1236 (citations omitted).

[32] *Dole*, 875 F.2d at 810.

[33] *See id.* at 809–810 (explaining that the cake decorators had no opportunity for profit or loss, even though they were paid per cake, because they had no input "[w]ith respect to the things upon which the volume of cakes depended, such as the number of retail outlets, and the quality and attractiveness of their decor, the selection and efficiency of the counter help, advertising for the business, the quality of the ingredients in the cakes . . . [or] the quality of their fellow workers [and] their finished products.").

9

business" as a whole, because he did not earn commissions on loads organized by other dispatchers or have any input on Defendant's expenditures.[34]  While Plaintiff exercised his own judgment to secure loads, and thus could make more commissions based on his performance, a reasonable jury could find that he did not have any control or stake in Defendant's overall profit.

Moreover, Plaintiff's working situation did not provide him with the typical opportunity for loss.  Whereas an independent contractor might take a loss on a project by not breaking even with expenses, an employee who works on commission still makes a profit in a bad month—just less of a profit.  In fact, courts have found these circumstances to be more reflective of a reduction in wages than a business loss.[35]  "A reduction in money earned . . . is not a 'loss' sufficient to satisfy the criteria for independent contractor status."[36]  The record reflects that Plaintiff's annual income fluctuated by a great deal, but a reasonable jury could find that the years in which he made a lower income were due to industry-wide issues caused by the pandemic, rather than work performance.

Therefore, the Court finds that a reasonable jury could conclude that this factor weighs in favor of employee status.

### C.     Investment

The third factor considers Plaintiff's investment in his job and Defendant's business.  A minimal investment weighs in favor of employee status.[37]  "This factor 'is interrelated to the

---

[34] *See id.* at 810.

[35] *See id.* ("Certainly, the [workers] did not undertake the risks usually associated with an independent business."); *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1536 (7th Cir. 1987) ("The migrants have invested nothing except for the cost of their work gloves, and therefore have no investment to lose.  Any reduction in earnings due to a poor pickle crop is a loss of wages, and not of an investment." (citation omitted)).

[36] *Dole*, 875 F.2d at 810 (citing *Lauritzen*, 835 F.2d at 1536).

[37] *See Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1236 (10th Cir. 2018) ("We consider [the plaintiff's] negligible expense as a factor that strongly supports [the plaintiff's] status as an employee rather than an independent contractor.").

profit and loss consideration.'"[38]  "The mere fact that workers supply their own tools or equipment does not establish status as independent contractors; rather, the relevant 'investment' is 'the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself.'"[39]  Defendant asserts that Plaintiff made significant investments by paying self-employment taxes, and deducting expenses such as medical insurance and business use of his home.  Plaintiff argues that he did not invest in the business, but rather Defendant provided him with equipment, supplies, and a place to work.

Neither party addresses the main thrust of this factor, which focuses on "compar[ing] the investments of the worker and the alleged employer."[40]  Even a significant investment by a worker could weigh in favor of employee status where the employer invests a disproportionately larger amount.[41]  Here, there is insufficient evidence in the summary judgment record to make a comparison between Plaintiff's investments and Defendant's investments, because there is no evidence of Defendant's investments.[42]

Nonetheless, a reasonable jury could find that the investments that can be ascribed to Plaintiff were negligible.  The record reflects that Plaintiff: (1) occasionally covered pizza or hotel costs to appease disgruntled drivers; and (2) paid $40 or $50 per week to relatives of co-

---

[38] *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998) (quoting *Lauritzen*, 835 F.2d at 1537).

[39] *Acosta*, 884 F.3d at 1236 (quoting *Dole*, 875 F.2d at 810).

[40] *Id.* (citing *Baker*, 137 F.3d at 1442); *see also Dole*, 875 F.2d at 810 (finding the cake decorators' annual investment in their decoration tools minimal compared to the defendants' investment in the overall business, including lease payments for eight facilities, advertising, operating expenses of the business, and other working materials for the cake decorators).

[41] *See Baker*, 137 F.3d at 1442 (finding that, though the plaintiffs made significant investments in their welding rigs, their investments were "disproportionately small" compared to the defendant's investment in the overall business, which included "hundreds of thousands of dollars of equipment at each work site.").

[42] For example, there is no evidence about whether Defendant owns its own fleet of trucks, how many workers it employs, and how much its office space costs.

workers to do his data entry.[43]  These minor costs, which Plaintiff took upon himself to make his job easier, likely do not qualify as the kind of significant investments that weigh in favor of independent contractor status.  However, the record also reflects that Plaintiff paid self-employment taxes.[44]  While relevant, this fact is not dispositive because there is no evidence that Plaintiff established his own company or made significant personal investments in a business of his own.[45]  Indeed, since Defendant classified Plaintiff as an independent contractor, Plaintiff was required to fill out the self-employment tax forms, and thus had the incentive to claim any available deductions.

Given the lack of evidence in the summary judgment record about Defendant's investments, and evidence that supports negligible investments by Plaintiff, a reasonable jury could find that this factor favors employee-status.

D. **Permanence**

The fourth factor considers the permanence of the working relationship between Plaintiff and Defendant.  "Generally speaking, '"independent contractors" often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas "employees" usually work for only one employer and such relationship is continuous and of indefinite duration.'"[46]  Plaintiff asserts that the length of the working relationship—more than four years—reflects that it was permanent in nature.  Defendant argues that the length of the

---

[43] Defendant also asserts that Plaintiff paid a 3% administrative fee for the use of his office at the BFR facility. Doc. 26 at 3. Plaintiff controverts this fact by arguing that he never paid such a fee and was never told that he would be charged such a fee. Doc. 27 at 4. The Court declines to consider the alleged rent as an investment because it is controverted.

[44] *Merrill v. Harris*, No. 21-1295, 2022 WL 3696669, at *11 (considering the facts that some plaintiffs "paid business-related taxes" and "established their own companies" as relevant to the investment inquiry).

[45] *See id.* (noting that several plaintiffs incurred significant expenses, around $90,000, for leasing and maintaining trucks, which supported the finding that the investment factor favored independent contractor status).

[46] *Baker*, 137 F.3d at 1442 (quoting *Dole*, 875 F.2d at 811).

working relationship should be discounted because, for the first 18 months of the relationship, Plaintiff was still a co-owner of Midwest.

The Court finds that a reasonable jury could conclude that the working relationship between Plaintiff and Defendant was permanent. Plaintiff worked exclusively for Defendant for over four years.[47] There is no indication that either party expected their working relationship to end. Moreover, Plaintiff does not assert that the employer-employee relationship began until Plaintiff left Midwest and began to work for Defendant. After Plaintiff began to work for Defendant in February 2018, it is uncontroverted that he stayed in his position for four and a half years. There is no evidence that Plaintiff worked for Defendant for fixed periods of time which were renewed. Instead, the working relationship was continuous and indefinite.

A reasonable jury could conclude that this factor weighs strongly in favor of a finding that Plaintiff was an employee, not an independent contractor.

**E.    Skill**

The fifth factor considers the degree of skill required to perform the job of dispatcher for Defendant. "For this factor, we consider whether the job contains a 'requirement of specialized skills'; if such a requirement exists, the worker is more likely to be considered an independent contractor."[48] The relevant specialized skills in this inquiry are distinct from general "occupational skills" which "any good employee in any line of work must [have]."[49] Defendant asserts that Plaintiff's job required skill, knowledge, and experience. Plaintiff concedes that he is experienced, but argues that the job itself required minimal specialized skill to perform.

---

[47] *See Dole*, 875 F.2d at 811 (finding that the record supported employee status where the plaintiff had worked for the employer for 4.5 years).

[48] *Acosta*, 884 F.3d at 1237 (quoting *Dole*, 875 F.2d at 811).

[49] *Dole*, 875 F.2d at 811 (quoting *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987)).

A reasonable jury could conclude that the skills required to be a dispatcher are not specialized beyond the skills that any good employee in the shipping and distribution business would possess. Plaintiff's experience in the trucking industry was undoubtedly helpful in his work as a dispatcher, but the analysis on this factor does not focus on skills that enable a worker to be particularly efficient, or to earn more money.[50] Rather, what is relevant is the kind of skill a worker must possess to be hired in the first place. Defendant identifies Plaintiff's duties as "secur[ing] loads for BFR drivers by communicating with customers, shippers, receivers, drivers, and brokers."[51] Job experience would certainly make those duties easier, but Defendant does not allege that it requires all dispatchers to possess the kind of work experience that Plaintiff has. Nor does Defendant identify any particular specialized skill that is necessary to perform the dispatcher job.

Based on these facts, a reasonable jury could conclude that this factor weighs in favor of a finding that Plaintiff was an employee, not an independent contractor.

### F.     Integral to Business

"The last factor turns 'on whether workers' services are a necessary component of the business.'"[52] If a worker's services are essential to the business, then this factor weighs in favor of finding the worker to be an employee.[53] Defendant asserts that, while obtaining business is important to any company, marketing and business development services do not weigh in favor

---

[50] *See id.*; *Merrill v. Harris*, No. 21-1295, 2022 WL 3696669, at *12 (10th Cir. Aug. 26, 2022) ("[D]istrict courts must examine what, if any, specialized skills are required to perform the work for the employer—and not . . . the skills needed for the worker to independently profit from the work." (citations omitted)).

[51] Doc. 26 at 3.

[52] *Acosta*, 884 F.3d at 1237 (quoting *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1443 (10th Cir. 1998)).

[53] *Id.*

14

of employee status because they are often outsourced. Plaintiff responds that Defendant could not function without dispatchers, and that Plaintiff was essential to the business.

A reasonable jury could find that Plaintiff's services were a necessary component of Defendant's business. It is uncontroverted that Plaintiff was hired to help Defendant grow as a trucking company.[54] Whether such duties are frequently outsourced is irrelevant to the inquiry on this factor. Instead, the finder of fact must consider whether Defendant could operate without dispatchers. Defendant employs dispatchers to coordinate between clients and drivers, tell drivers which loads to accept or reject, and handle problems that arise with deliveries. As a business that provides trucking services, a reasonable jury could easily find that dispatchers are necessary to Defendant's business.

A reasonable jury could conclude that the sixth factor weighs in favor of a finding that Plaintiff was an employee, not an independent contractor.

### G. Economic Dependence

The final step in the economic realities test is to review the findings on each factor and conclude whether Plaintiff, as a matter of economic reality, was in business for himself or economically dependent upon Defendant.[55] However, at summary judgment, the question is whether a reasonable jury could make findings which would support the legal conclusion that Plaintiff is an employee.[56] The Court finds that a reasonable jury could do so.

Specifically, a reasonable jury could find that: (1) Defendant controlled Plaintiff's work; (2) Plaintiff had minimal opportunity for profit and no opportunity for loss; (3) Plaintiff made only negligible investments in his job and Defendant's business; (4) the working relationship

---

[54] Doc. 27 at 9.

[55] *See Baker*, 137 F.3d at 1443.

[56] *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 571 (10th Cir. 1994).

was permanent; (5) the dispatcher job required no specialized skills; and (6) Plaintiff's work as a dispatcher was integral to Defendant's business. These findings would support the legal conclusion that Plaintiff was an employee, not an independent contractor.

Since a reasonable jury could make the findings listed above, Defendant has not demonstrated that it is entitled to judgment as a matter of law. Therefore, summary judgment is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's motion for summary judgment (Doc. 25) is **denied**.

**IT IS SO ORDERED.**

Dated: February 1, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
